

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-31-1997

# Green v. Phila Housing Auth

Precedential or Non-Precedential:

Docket 95-1908

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation
"Green v. Phila Housing Auth" (1997). *1997 Decisions.* Paper 24.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/24

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 95-1908
_____


DONALD GREEN,
                  Appellant

v.

PHILADELPHIA HOUSING AUTHORITY;
WILLIAM BERGMAN, INTERIM CHIEF OF POLICE;
DANIEL ROSENSTEIN, CAPTAIN; JOHN CRESCI, DEPUTY CHIEF,
IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES
AS OFFICIALS OF THE PHILADELPHIA HOUSING AUTHORITY


_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 94-cv-02885)
_____


Argued June 12, 1996

Before:  SCIRICA and ROTH, Circuit Judges
and RESTANI, Judge, Court of International Trade*


(Filed January 31, 1997)



                    DAVID RUDOVSKY, ESQUIRE (ARGUED)
                    Kairys, Rudovsky, Kalman,
                      Epstein & Messing
                    924 Cherry Street, 5th Floor
                    Philadelphia, Pennsylvania 19107

                    Attorney for Appellant



_____

*The Honorable Jane A. Restani, Judge, United States Court of
International Trade, sitting by designation.

M. KEVIN HUBBARD, ESQUIRE (ARGUED)
Philadelphia Housing Authority
2012 Chestnut Street
Philadelphia, Pennsylvania 19103

Attorney for Appellees

---

OPINION OF THE COURT

---

SCIRICA, <u>Circuit</u> <u>Judge</u>.

The Philadelphia Housing Authority transferred one of its police officers from special drug enforcement duty to regular patrol duty after his appearance at a bail hearing as a character witness for a reputed organized crime associate. The officer contends his transfer violated his free speech and association rights. At trial, after the close of all evidence, the district court granted defendants judgment as a matter of law under Fed. R. Civ. P. 50. We will affirm.[1]

## I. Background

The plaintiff, Donald Green, has been employed as a police officer for the Philadelphia Housing Authority Police Department since November, 1991. In February, 1994, he was assigned to the Housing Authority Police Department's Drug Elimination Task Force ("DETF"). The DETF is a special unit that works together with other law enforcement agencies to combat illegal drug activity on Philadelphia Housing Authority property.

---

1. We have jurisdiction under 28 U.S.C. § 1291. Our standard of review is plenary. <u>See</u> <u>Watters v. City of Philadelphia</u>, 55 F.3d 886, 891 (3d Cir. 1995).

Several weeks after his assignment to the DETF, Green received a telephone call from Norman Keller, a friend of over twenty years, asking him to testify as a character witness on behalf of his son, Herbert Keller, at a bail hearing in federal court. Pursuant to Housing Authority Police Department regulations, Green made a written request to his immediate supervisor for permission to testify. Green received approval, provided that he testify during his lunch hour and in civilian clothing.

On March 23, 1994, Green appeared at the bail hearing, and Keller's attorney introduced him by name and occupation. The magistrate judge then proceeded to read the charges pending against Keller, which included organized crime activity in connection with the Stanfa crime organization. Green, who until that time was unaware of the organized crime charges, told Keller he could not be associated with the case and left the hearing without testifying.

Later that day, an unidentified law enforcement officer told the DETF Captain, defendant Daniel Rosenstein, that Green had appeared as a character witness for a member of the Stanfa crime organization. Rosenstein ordered Green removed from "street" work and told him there would be an investigation into his possible ties with organized crime. Rosenstein then sent a memorandum to the Housing Authority Police Department's Deputy Chief of Police, defendant John Cresci, recommending such an investigation and requesting Green's temporary transfer to regular patrol duty pending its outcome.

3

Subsequently, Cresci discussed the matter with the Housing Authority Police Department's Acting Chief of Police, defendant William Bergman.  They decided a departmental investigation was unnecessary because it would duplicate the ongoing federal investigation of the Stanfa crime organization, and also because they did not believe Green was affiliated with organized crime.  But Cresci and Bergman agreed with Rosenstein that Green should be transferred.  On March 31, 1994, Green was formally transferred from the DETF to regular patrol duty.

Green's duties changed as a result of his transfer.  As a DETF officer, Green participated in drug raids, made drug-related arrests, and was generally responsible for enforcing the drug laws.  After the transfer to regular patrol duty, Green was principally assigned to work out of a building's security booth.  Green's salary was not reduced, although he claims his opportunities to work overtime (and consequently to earn overtime pay) decreased.

Green contends his transfer constituted unlawful retaliation for protected First Amendment activity.  He brought this action against the Philadelphia Housing Authority, Rosenstein, Cresci and Bergman under: 42 U.S.C. § 1983 for violation of his First Amendment rights to freedom of speech and association; 42 U.S.C. § 1985(2) for violation of his right to be free from retaliation for his appearance as a witness in federal court; and the Pennsylvania Constitution for deprivation of reputation without due process of law.

4

At trial, defendants Bergman and Cresci testified they had no information or even suspicion Green was involved with organized crime,[2] but that his transfer was nonetheless justified. They explained Green was transferred "in case there was anything where [the Housing Authority Police Department] might be embarrassed . . ." and because it "was right for the organization." (J.A. at 122, 164.) In their brief on appeal, defendants maintain they transferred Green out of their concern that the appearance of his ties to organized crime would "bring[] . . . discredit upon the image of the [Housing Authority Police Department], [and] endanger[] the plaintiff." (Appellee's Br. at 10.)[3]

At the close of evidence at trial, the district court granted defendants' Rule 50 motion for judgment as a matter of law on all claims. Green brought this appeal. In reviewing the district court's judgment, we must determine whether "viewing all the evidence which has been tendered and should have been admitted in the light most favorable to the party opposing the motion, no jury could decide in that party's favor." Watters v. City of Philadelphia, 55 F.3d 886, 891 (3d Cir. 1995) (quoting

---

2. Bergman also testified that, if he had any such suspicion, he would have fired Green instead of merely transferring him.

3. As far as we know, Green has not been reinstated to DETF duty. At trial, Cresci and Bergman testified that Green may be reinstated after the close of the Stanfa trial. Rosenstein testified somewhat differently, stating that Green's reinstatement turned on whether the Housing Authority Police Department found him innocent of wrongdoing. Green testified that Cresci told him his transfer was permanent.

5

<u>Walter v. Holiday Inns, Inc.</u>, 985 F.2d 1232, 1238 (3d Cir. 1993)).

## II. Discussion

### A. Section 1983 (First Amendment)

On appeal Green contends his First Amendment right to free speech was violated because he was transferred in retaliation for his appearance as a character witness at Keller's bail hearing. A public employee's claim of retaliation for engaging in a protected activity is analyzed under a three-step process. <u>See</u> <u>Pro v. Donatucci</u>, 81 F.3d 1283, 1288 (3d Cir. 1996); <u>Watters v. City of Philadelphia</u>, 55 F.3d 886, 892 (3d Cir. 1995); <u>Swineford v. Snyder County Pa.</u>, 15 F.3d 1258, 1270 (3d Cir. 1994). A plaintiff must first demonstrate the activity in question was protected. Second, the plaintiff must show the protected activity was a substantial or motivating factor in the alleged retaliatory action. <u>See</u> <u>Swineford</u>, l5 F.3d at l270. Finally, defendants may defeat plaintiff's claim by demonstrating "that the same action would have been taken even in the absence of the protected conduct." <u>Id.</u> The district court did not reach the last two factors because it resolved the first factor in defendants' favor as a matter of law. Accordingly, our discussion will focus on the first step, whether Green's appearance in court was a protected activity.

To qualify as a protected activity, Green's court appearance must satisfy the <u>Pickering</u> balancing test. <u>See</u> <u>Pickering v. Board of Educ. of Twp. High Sch. Dist. 205, Will County</u>, 391 U.S. 563 (1968). First, the court appearance must

6

constitute "speech . . . on a matter of public concern." Watters, 55 F.3d at 892. Second, the public interest favoring his expression "must not be outweighed by any injury the speech could cause to the interest of the state as an employer in promoting the efficiency of the public services it performs through its employees." Id. See also Pickering, 391 U.S. at 568 ("The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."); Versarge v. Township of Clinton N.J., 984 F.2d 1359, 1366 (3d Cir. 1993) ("On plaintiff's side of the balance, we must . . . consider the interests of the public in plaintiff's speech."). Determining whether Green's appearance is protected activity under Pickering is an issue of law for the court to decide. See Waters v. Churchill, 114 S. Ct. 1878, 1884 (1994).

## 1.  A Matter of Public Concern

Initially we must determine whether Green's appearance as a character witness is a matter of public concern. See Swineford, l5 F.3d at l270-72. We have held a public employee's appearance as a witness, even in the absence of actual testimony, is "speech" under Pickering. Pro, 81 F.3d at 1291. A public employee's speech involves a matter of public concern if it can "be fairly considered as relating to any matter of political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983); see also Watters, 55 F.3d at 892;

7

Versarge, 984 F.2d at 1364. This determination turns on the content, form and context of the public employee's speech. See Watters, 55 F.3d at 892.[4] The district court held Green's court appearance was a matter of public concern. We agree.

In Pro v. Donatucci, we recognized that a public employee's court appearance in response to a subpoena is a matter of public concern. 81 F.3d at 1291. The plaintiff in that case, Sisinia Pro, was subpoenaed by her employer's wife to appear as a witness at her employer's divorce proceedings. Pro appeared at the hearing but was never called to testify. She was fired shortly thereafter. Pro brought suit against her employer under 42 U.S.C. § 1983, claiming he fired her in retaliation for protected activity. We found that Pro had a First Amendment right to appear in court despite the fact that the content of her speech was "purely private," because the form and context of her speech was of public concern, i.e. an appearance to deliver sworn testimony before an adjudicatory body. In explaining our holding, we stated, "[T]he public employee's interest in

_____

4. In Holder v. City of Allentown, 987 F.2d 188 (3d Cir. 1993), we explained:

The content of the speech may help to characterize it as relating to a matter of social or political concern of the community if, for example, the speaker seeks to `bring to light actual or potential wrongdoing or breach of public trust' on the part of government officials. The form and context of the speech may help to characterize it as relating to a matter of social or political concern to the community if, for example, the forum where the speech activity takes place is not confined merely to the public office where the speaker is employed.

Id. at 195 (citations omitted).

responding to a subpoena and the judicial interest in having state employees respond to subpoenas without fear of employer reprisal justify our ruling. Moreover, . . . there is no `practical distinction between retaliation on the basis of a public employee's actual testimony and the retaliation that Pro alleges.'" Id. (quoting Pro v. Donatucci, No. 94-CV-6001, 1995 WL 552980, at *4 n.3 (E.D. Pa. Sept. 18, 1995)).

We declined to rule in Pro whether a public employee's voluntary appearance in court, not under subpoena, would be a matter of public concern. See id. at 1291 n.3. That is one of the issues facing us here, and it merits some discussion.

Although in practical terms it may be inconsequential whether a witness has been subpoenaed (one can "volunteer" to receive a subpoena), there would appear to be a conceptual distinction that turns on a witness's will or desire to testify, especially in this context where the witness is a law enforcement officer. It should matter, therefore, whether a police officer chooses to interject himself into a bail hearing, which is an adversary proceeding, as a character witness for a defendant. On the other hand, there is a compelling reason to find Green's appearance to be a matter of public concern regardless of its voluntary nature. That reason, of course, is the integrity of the truth seeking process.

For guidance we will turn, as we did in Pro, to a line of cases from the Court of Appeals for the Fifth Circuit holding a public employee's truthful testimony, even if voluntary, is inherently a matter of public concern protected by the First

Amendment. See id. at 1288 (citing Reeves v. Claiborne County Bd. of Educ., 828 F.2d 1096, 1100-01 (5th Cir. 1987); Johnston v. Harris County Flood Control Dist., 869 F.2d 1565, 1578 (5th Cir. 1989), cert. denied, 493 U.S. 1019 (1990)). As the Fifth Circuit observed, "When an employee testifies before an official government adjudicatory or fact-finding body he speaks in a context that is inherently of public concern. Our judicial system is designed to resolve disputes, to right wrongs. We encourage uninhibited testimony, under penalty of perjury, in an attempt to arrive at the truth. We would compromise the integrity of the judicial process if we tolerated state retaliation for testimony that is damaging to the state." Johnston, 869 F.2d at 1578 (quotations and citations omitted); see also Smith v. Hightower, 693 F.2d 359, 368 (5th Cir. 1982) ("[T]he first amendment protects the right to testify truthfully at trial.").

Identical concerns are implicated by Green's voluntary appearance at Keller's bail hearing, where the court depends upon accurate testimony by those familiar with the defendant in order to determine whether the defendant is likely to flee or endanger the community. See 18 U.S.C. § 3142 (judicial officer must release defendant on bail unless such release "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community."). The utility of uninhibited testimony and the integrity of the judicial process would be damaged if we were to permit unchecked retaliation for appearance and truthful testimony at such

10

proceedings. Not only would "the first amendment right of the witness be infringed by this type of coercion, the judicial interest in attempting to resolve disputes by arriving at the truth would be in jeopardy. Furthermore, a witness who succumbed to any real or imagined coercion could also be subject to a charge of perjury." Reeves, 828 F.2d at 1100.

In Pro, we held the context of a courtroom appearance raises speech to a level of public concern, regardless of its content. Pro, 81 F.3d at 1291; see also Johnston, 869 F.2d at 1578 ("The goal of grand jury proceedings, of criminal trials, and of civil trials is to resolve a dispute by gathering the facts and arriving at the truth, a goal sufficiently important to render testimony given in these contexts speech `of public concern.'"); Reeves, 828 F.2d at 1100 (holding sworn subpoenaed testimony is matter of public concern, even though the content of the testimony "did not concern the type of political speech which lies at the core of first amendment freedoms"); Langley v. Adams County, Colo., 987 F.2d 1473, 1479 (10th Cir. 1993) ("The law is clearly established that the `First Amendment protects the right to testify truthfully at trial.'"). But see Wright v. Illinois Dep't of Children & Families Servs., 40 F.3d 1492, 1505 (7th Cir. 1994) (declining to adopt Fifth Circuit analysis); Arvinger v. Mayor and City Council of Baltimore, 862 F.2d 75, 79 (4th Cir. 1988) (emphasizing the importance of content over context). We can discern no reason why a voluntary appearance would eliminate

11

the public interest.  Therefore, we hold that Green's voluntary appearance as a character witness is a matter of public concern.[5]

## 2.  Balance of Interests

The question remains whether Green's free speech interest in testifying as a character witness is outweighed by any injury the speech could cause to the interests of the Housing Authority Police Department as employer.  See Waters, 114 S. Ct. at 1884; Pickering, 391 U.S. at 568; Swineford, l5 F.3d at l272.  If Green's court appearance could potentially disrupt the work of the Housing Authority Police Department, and this potential for injury outweighs the public's interest in Green's speech, then judgment for the defendants is proper.  See Waters, 114 S. Ct. at 1890 (weighing First Amendment "value" of speech against "the potential disruptiveness of the speech").  The district court granted the Housing Authority judgment as a matter of law, finding Green's appearance injured the DETF's interests in minimizing departmental disruption and maintaining an environment of trust and security.

---

5.  Judge Roth would note that had this Court not held in Pro v. Donatucci, 81 F.3d at 1288-91, that a public employee's potential sworn testimony before an adjudicatory body was a matter of public concern and protected by the First Amendment, she would dissent on the issue of whether the public employee's actions here were a matter of public concern.  She dissented in Pro on the basis that compliance with a subpoena is not speech.  She does not, however, believe that she can distinguish the present case from Pro on the sole basis that here the public employee had not been subpoenaed.  Were Pro not precedent, she would disagree with the panel that a non-subpoenaed appearance by a public employee, much less than a subpoenaed appearance, is a matter of public concern.  She would nevertheless concur in the ultimate conclusion that, due to their potential disruptive impact, the actions here were not protected speech.

12

Normally, this balancing test would be an issue of fact and would remain in the hands of the fact finder. But where the presence of factual disputes would normally preclude the court from ruling as a matter of law, Supreme Court precedent requires the trial court to do so. "Although such particularized balancing is difficult, the courts must reach the most appropriate possible balance of the competing interests. . . . [Courts] are compelled to examine for [them]selves the statements in issue and the circumstances under which they [are] made to see whether or not they . . . are of a character which the principles of the First Amendment . . . protect." Connick, 461 U.S. at 150 & n.10 (quoting Pennekamp v. Florida, 328 U.S. 331, 335 (1946)).

In weighing the competing interests, we begin with the proposition that all court appearances are matters of public concern. That is so because all court appearances implicate the public's interest in the integrity of the truth seeking process and the effective administration of justice. But at the same time, it would appear that the strength of the public's interest can vary based on the nature of the court appearance. See Pro, 81 F.3d at 1291 n.4 ("We have not held that courtroom testimony should receive `absolute' First Amendment protection.")

It is of some moment, therefore, that Green appeared voluntarily, not in response to a subpoena. As we have held, a voluntary court appearance is a matter of public concern. We encourage voluntary testimony so that parties and courts have access to all available information and witnesses. But the public interest favoring subpoenaed testimony is even stronger.

13

It implicates not only the integrity of the truth seeking process and the effective administration of justice, but also the public's interest in protecting court-ordered conduct.  See id. at 1290 ("A subpoenaed witness has no choice but to appear at a trial, unless he is willing to risk a finding of contempt.") (quoting Pro v. Donatucci, No. 94-CV-6001, 1995 WL 552980, at *13-14 (E.D. Pa. Sept. 18, 1995)).  As Green appeared voluntarily, it would seem that the public's interest in his court appearance is somewhat more limited than it would be if his appearance were subpoenaed.

Nor do we find it significant that Green appeared as a witness at a bail hearing as opposed to a trial.  Reputation testimony is probative in either.  In addition, while some commentators have implied that character testimony is less important than fact testimony,[6] we believe no distinction should be made between character and fact testimony for Pickering purposes.  Both are essential to the truth seeking process.[7]

---

6.  See, e.g., McCormick on Evidence 549 (Edward W. Cleary ed.) (3d ed. 1984) ("[I]n many situations, the probative value [of character evidence] is slight and the potential for prejudice large.").

7.  See, e.g., United States v. Logan, 717 F.2d 84, 87-93 (3d Cir. 1983) (discussing the importance of character testimony, and recommending a jury instruction that, "[w]here a defendant has offered evidence of good general reputation for truth and veracity, . . . the jury should consider such evidence along with all the other evidence in the case" and that "[e]vidence of a [criminal] defendant's reputation . . . may give rise to a reasonable doubt"); see also Committee on Model Crim. Jury Instructions Within the 8th Cir., Manual of Model Crim. Jury Instructions for the District Courts of the 8th Cir. 89 (1994) (some circuits now favor a jury instruction that character evidence should be considered together with all other evidence in a case; the "standing alone" charge is seen as an unwarranted

14

In comparison, the interests of the Housing Authority Police Department as employer are very significant.  They include successfully fighting drugs and crime, protecting the safety of its officers and other members of the community, fostering trust and confidence among its officers and between its officers and other law enforcement drug units, and protecting the Housing Authority Police Department's reputation.  As defendants state in their brief on appeal, they were concerned "that the plaintiff's voluntary appearance, as a narcotics officer, at a bail hearing on behalf of a reputed organized crime associate would bring discredit upon the [Housing Authority Police Department], endanger the plaintiff and tarnish the image of the [Housing Authority Police Department] in the eyes of the residents of public housing the department serves . . . ."  (Appellee's Br. at 5.)  These interests merit substantial protection, and any risk of departmental injury or disruption weighs heavily under the Pickering balancing test.

We agree with the district court that there was a risk of departmental injury based on the "potential disruptiveness of the speech."  Waters, 114 S. Ct. at 1890.  First, an unnamed police officer telephoned Rosenstein to report Green's appearance at Keller's hearing.  Second, Green testified at trial he heard comments from co-workers and friends that "[g]uys wouldn't want to work with me because they were afraid that I knew people in the mob . . . ." (J.A. at 59.)  Finally, because of the nature of
(..continued)
invasion of the jury's special function in deciding what weight
to give any particular item of evidence.).

15

DETF work, any perceived breach of trust and security could reasonably constitute a threat to the DETF, its officers and its relationships with other police drug units and the community it serves. This risk of injury to the Housing Authority Police Department outweighs the public interest favoring Green's speech. Judgment as a matter of law for defendants is proper under Pickering.

Green argues he should not be held responsible for creating the potential disruption because he followed departmental procedures and testified only after receiving express permission from his superiors. But a public employee in a sensitive position like Green cannot turn a blind eye to the possible consequences of his voluntary testimony. The responsibility must lie with Green to investigate the nature of the criminal charges, and to bear any risks associated with his voluntary court appearance.[8]

Green also claims that the Housing Authority Police Department's reasons for his transfer were pretextual, i.e. that the potential for departmental disruption was not the true cause for his transfer. But the test in Waters is an objective one for "potential disruptiveness." Waters, 114 S. Ct. at 1890; see also Watters, 55 F.3d at 896. Therefore any pretext is irrelevant to our weighing analysis.

---

8. Nor do we believe this case raises questions of equitable estoppel. For example, if Green had been granted permission to testify after advising his supervisors that Keller was an organized crime associate, the Housing Authority Police Department might well be estopped from imposing sanctions.

The second step in the <u>Pickering</u> analysis, whether the protected activity was a substantial or motivating factor in the transfer decision, would be a factual issue for the jury. But under <u>Pickering</u> we do not reach this step. Nor do we reach the third step in the analysis, whether defendants would have transferred Green even in the absence of his speech. Therefore we will affirm the district court.

### 3. Conclusion

Implicit in Green's claims is the notion his transfer was unfair under the circumstances. Green voluntarily chose to testify as a character witness for the son of a friend. He followed the applicable rules and received permission to testify, although neither the Housing Authority Police Department nor he knew of the organized crime association. He appeared at the bail hearing, but when he realized the nature of the charges facing Keller and his association with organized crime, he left the hearing without testifying. His superiors testified they do not believe he has any association with organized crime and, in fact, if they had, Green would have been fired.

Nonetheless, the Housing Authority Police Department contends Green's actions were potentially disruptive to the proper functioning of the department. Whether there is potential disruption is an issue of law for the court. We have found there was a likelihood of disruption and that it outweighs the interests favoring the protected activity.

Had Green been fired instead of reassigned, the penalty would have appeared especially severe in view of his supervisors'

17

belief that he had no association with organized crime.  It may be argued, therefore, that the degree of harm should be factored into the test.  But if the proper standard is the potential for disruption, it is difficult to see how the extent of harm can be taken into account.

Of course, different facts can change the calculus.  In weighing the protected interest against the likelihood of disruption, it is especially significant that a law enforcement officer whose primary duty is to fight drugs testified as a character witness for a defendant who was part of an organization well known for its involvement in the drug trade.  The correlation could not be more direct nor more damaging to the Housing Authority Police Department's role.  A more oblique correspondence might well bring a different result under the weighing process.

## B.  Section 1985(2)

Green also brought a claim under 42 U.S.C. § 1985(2), alleging defendants illegally conspired to transfer him in retaliation for his appearance as a character witness in federal court.  But, as we have held, defendants' transfer of Green was not unlawful.  For the reasons we have stated and for those given by the district court, we hold the dismissal of Green's § 1985(2) claim was proper.

## C.  State Constitution

Green also sued defendants under the Pennsylvania Constitution for deprivation of reputation without due process. The district court rejected Green's deprivation of reputation

18

claim as a matter of law because Green could not establish a causal connection between his reputation injury and the defendants' conduct.  We agree this claim was properly dismissed.

### III.  Conclusion

For these reasons we will affirm the judgment of the district court.[9]

---

9.  In light of our decision to uphold the district court's dismissal of Green's claims, there is no need to discuss the other issues on appeal:  whether the trial court erred in excluding certain evidence of harm to plaintiff's reputation and in ruling that punitive damages could not be awarded.