**Thomas LYNCH,**

v.

**CITY OF PHILADELPHIA, et. al.**

No. 00–0158.

United States District Court,
E.D. Pennsylvania.

June 29, 2001.

Joan Gaughan Atlas, Koral, Kahn & Koral, PC, Philadelphia, PA, for Plaintiff.

Daren B. Waite, City of Philadelphia, Law Department, George A. Voegele, Jr., Klett, Lieber, Rooney & Schorling, P.C., Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

HUTTON, District Judge.

Presently before the Court are the Defendants' Motion for Summary Judgment (Docket No. 12), the Plaintiff's Response to Defendants' Motion for Summary Judgment (Docket No. 14), the Defendants' Reply Brief in Support of Their Motion for Summary Judgment (Docket No. 16), and the Plaintiff's Sur Reply to Defendants' Response (Docket No. 18).

## I. BACKGROUND

The Plaintiff, Thomas Lynch, has been a member of the Philadelphia Police Department (PPD) since 1977. After serving in various capacities throughout the years, he was promoted to Captain in 1991 and assigned to the Management Review Bureau (MRB). While at the MRB, the Plaintiff performed audits, reviewed PPD practices and procedures, and performed inspections. During that time, the Plaintiff was temporarily assigned to fill command level vacancies in various departments. It was during these assignments that the Plaintiff came to know Michael Vassallo and William Gatter.

In August of 1997, the Plaintiff was subpoenaed to testify at the trial of former Philadelphia Police Sergeant Michael Vassallo (Vassallo). Vassallo had been arrested for shoplifting and convicted in the Philadelphia Municipal Court of retail theft. At the time, the Plaintiff was Vassallo's commanding officer and was set to testify regarding the events surrounding Vassallo's arrest. After objections made by Assistant District Attorney (ADA) Schoenberg who was prosecuting the case, the Court did not allow the Plaintiff to testify. However, ADA Schoenberg notified the inspector of the Internal Affairs Bureau that the Plaintiff had made a surprise appearance at the Vassallo trial and the Plaintiff was required to explain his appearance to then Philadelphia Police Commissioner Richard Neal.

In January of 1998, the Plaintiff's testimony was requested [1] at the trial of Sergeant William Gatter (Gatter). Gatter was accused of perjuring himself before the grand jury by denying that he saw a fellow officer beating a prisoner. On January 29, 1998, the Plaintiff testified as a character witness for Gatter in a trial which eventually ended in a hung jury. At Gatter's retrial, the Plaintiff was again requested [2] to appear and again testified as a character witness for Gatter. Gatter's retrial ended in an acquittal.

On September 14, 1998, the Plaintiff was transferred from his post in MRB to the Command Inspections Bureau (CIB). The CIB provides a command presence in the city during nighttime hours. An assignment to CIB has traditionally been seen as undesirable. In previous years, the assignment has been used for disciplinary reasons or as a holding place for command level personnel who are in a transitional phase. The Plaintiff viewed this as retaliation for his testimony in the two criminal prosecutions.

1. The Plaintiff was requested to testify via a "court notice." A "court notice" goes to police officer's indicating that their appearance has been requested in court and does not state on its face whether it is the result of a subpoena.

2. Again, the Plaintiff appeared pursuant to a "court notice."

On January 11, 2000, the Plaintiff filed a complaint alleging violations of 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1986, the First Amendment, the Fourth Amendment, the Fifth Amendment, the Fourteenth Amendment, 18 Pa.C.S.A. § 4953(A), and the Pennsylvania Constitution against the City of Philadelphia, Police Department of the City of Philadelphia (PPD), the Police Commissioner John Timoney (Timoney), former Deputy Commissioner Richard Zappile (Zappile), and Inspector Internal Affairs Division John Norris (Norris). The Plaintiff agreed to dismiss the claims against Defendant Zappile as well as his claims under § 1985, § 1986, the Fourth Amendment, the Fifth Amendment, the Fourteenth Amendment, and 18 Pa.C.S.A. § 4953(A). In addition, the Plaintiff's claim against the City of Philadelphia Police Department cannot proceed as it is not a separate legal entity that can be sued separately from the City of Philadelphia which is also a named Defendant. *See Atkinson v. City of Philadelphia*, No. CIV.A. 99–1541, 2000 WL 295106, at *2 (E.D.Pa. March 20, 2000). The Plaintiff's remaining claims are § 1983, the First Amendment, and a claim under the free speech clause of the Pennsylvania Constitution Article 1, Section 7. On December 29, 2000, the Defendants filed the motion for summary judgment which is the subject of this opinion.

## II. *STANDARD OF REVIEW*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing the basis for its motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323,

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Ultimately, the moving party bears the burden of showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325, 106 S.Ct. 2548. Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial. *See id.* at 324, 106 S.Ct. 2548. A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. *See id.*

When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the nonmovant. *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992). Moreover, a court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's evidence far outweighs that of its opponent. *See id.* Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements. *See Trap Rock Indus., Inc. v. Local 825*, 982 F.2d 884, 890 (3d Cir.1992). The court's inquiry at the summary judgment stage is the threshold inquiry of determining whether there is need for a trial, that is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *See Anderson*, 477 U.S. at 250–52, 106 S.Ct. 2505. If there is sufficient evi-

dence to reasonably expect that a jury could return a verdict in favor of plaintiff, that is enough to thwart imposition of summary judgment. *See id.* at 248–51, 106 S.Ct. 2505.

### III. *SECTION 1983 (FIRST AMENDMENT)*

■ The Court uses a three-step analysis when analyzing a public employee's claim of retaliation for engaging in a protected activity. *See Green v. Philadelphia Hous. Auth.*, 105 F.3d 882, 885 (3d Cir.1997). First, the Court must determine as a matter of law whether the activity in question was protected. *See Watters v. City of Philadelphia*, 55 F.3d 886, 892 (3d Cir.1995). Next, the Plaintiff must show that the protected activity was a substantial or motivating factor in the alleged retaliatory action. *See Green*, 105 F.3d at 885. Finally, the defendant may prevail by showing that the same action would have been taken regardless of the plaintiff's engagement in the protected activity. *See id.*

### A. *Protected Activity.*

■ The Third Circuit has held that a public employee's appearance in court as a witness qualifies as "speech". *See id.* "[I]t is well established [that] public employers cannot condition public employment on a basis that infringes an employee's constitutionally protected interest in free expression." *Swineford v. Snyder County Pennsylvania*, 15 F.3d 1258, 1269 (3d Cir.1994). However, a public employer does have more leeway to regulate its employees' speech than it does the general public. *See id.* For a public employee's speech to be protected speech, it "must be on a matter of public concern, and the employee's interest in expression on this matter must not be outweighed by any injury the speech could cause to the inter-

est of the state as an employer in promoting the efficiency of the public services it performs through its employees." *Watters*, 55 F.3d at 892.

#### 1. *A Matter of Public Concern.*

■ A public employee's speech will be considered a "matter of public concern if it can 'be fairly considered as relating to any matter of political, social, or other concerns to the community.'" *See Green*, 105 F.3d at 886 (quoting *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983)). In *Pro v. Donatucci*, 81 F.3d 1283, 1290–91 (3d Cir. 1996), the Third Circuit found that a public employee's appearance in court pursuant to a subpoena was a matter of public concern. *See also Green*, 105 F.3d at 886. Subsequently in *Green*, that principle was extended to apply to testimony in court given voluntarily. *See Green*, 105 F.3d at 887. Therefore, it is clear that appearing in court is a matter of public concern and the Plaintiff in this case has satisfied that element.

#### 2. *Balance of Interests.*

■ After determining that the public employee's speech is a matter of public concern, the Court must decide whether the Plaintiff's interest in the speech is outweighed by any injury the speech could cause Defendants. *See id.* The Plaintiff in the instant case has a significant interest in appearing to testify in court. *See id.* While there is some lessened degree of interest when that testimony is given voluntarily, there is no indication that there was voluntary testimony in this case. *See id.* It is true that the Plaintiff was a willing participant in the Court proceedings but he appeared pursuant to a subpoena in the first case and pursuant to a "court notice" the next two times. While the Defendants argue that the "court no-

tice" is not necessarily pursuant to a subpoena, there is no indication that it wasn't in this case. However, even if the Defendants were able to show that the Plaintiff's testimony was voluntary, the testimony would still be considered a weighty interest. *See id.*

 The Court must balance this significant interest against the potential harm caused to the PPD. In this context, the Court should consider "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987). The public employer's side of the scale focuses mostly on the interference or potential interference with the effective functioning of their department. *See id.* at 389, 107 S.Ct. at 2899; *see also Waters v. Churchill,* 511 U.S. 661, 680, 114 S.Ct. 1878, 1890, 128 L.Ed.2d 686 (1994). The Court should consider "the manner, time, and place of the employee's expression" as well as "the context in which the dispute arose." *See Rankin,* 483 U.S. at 388, 107 S.Ct. at 2899.

The Defendants assert that there was significant potential for interference with the operation of the department evidenced by complaints from the District Attorney's Office, and questions by subordinates as to why the Plaintiff was supporting a criminal. In addition, the Defendants claim that the Plaintiff made statements to the public critical of the department which results in negative publicity. The Defendants feel these activities could reasonably constitute a breach of trust, a threat to the PPD's mission, and could be damaging to

the PPD's relationship with the District Attorney's office and the community.

While the Defendants rely largely on the Third Circuit's decision in *Green,* that case differs significantly from the instant case. In *Green,* the Plaintiff was a member of the Housing Authority Police Department's Drug Elimination Task Force (DETF) who attended a bail hearing to testify as a character witness on behalf of a friend's son. *See Green,* 105 F.3d at 884. While at the hearing, the Plaintiff realized that the accused was allegedly connected to organized crime and decided not to testify. *See id.* After word of his attendance at the hearing got back to the Plaintiff's superiors, the Plaintiff was transferred out of the DETF. *See id.* The Court found that the risk of disruptiveness outweighed the Plaintiff's interest in testifying because other officers no longer wished to work with him because they felt he may have ties to organized crime and "because of the nature of DETF work, any perceived breach of trust and security could reasonably constitute a threat to the DETF, its officers and its relationships with other police drug units and the community it serves." *Id.* at 888–89. The Court finds that *Green* provides little guidance as to the issue of the Defendant's interest because neither the Plaintiff's position nor the reasons for his testimony implicate the same fundamental issues associated with sensitive drug enforcement officials potentially being involved with people associated with organized crime.

The Defendants essentially rely on broad statement and vast supposition to determine that there could be a disruptive effect on the functioning of the PPD. In this case, the Plaintiff testified as a character witness for fellow officers accused of crimes. There is no indication that he testified falsely or in a manner which would undermine the PPD. In fact, his

testimony was specifically character testimony brought to show the good character of fellow police officers. The Defendants do not point to any impediment this testimony caused or could have caused between the Plaintiff and his superiors other than questions from subordinates regarding the reasons for the Plaintiff's testimony and complaints from the District Attorney's Office because they were not notified in advance of the Plaintiff's testimony. There are no specific examples of how the Plaintiff's testimony could or did "impair[ ] discipline by superiors or harmony among co-workers, ha[ve] a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impede[ ] the performance of the speaker's duties or interfere[ ] with the regular operation of the enterprise." *Rankin*, 483 U.S. at 388, 107 S.Ct. at 2899. For this reason, the Court finds the potential for disruption in PPD affairs based upon the Plaintiff's testimony to be minimal.

For the foregoing reasons, the Court finds that the Plaintiff's interest in the protected speech is not outweighed by any injury the speech could cause the Defendants. Therefore, the Plaintiff's speech is considered a protected activity.

**B. *Substantial and Motivating Factor/Alternative Reasons for the Action.***

 Once it is established that the Plaintiff's speech is protected, the Plaintiff must show that it was a substantial or motivating factor in the alleged retaliatory action. *See Green*, 105 F.3d at 885. In his deposition in a related case, Defendant Timoney testified that a transfer to CIB had been viewed in the past as a disciplinary action. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. at Exh. 4, 13:1–18:3. In addition, the Plaintiff has provided a memorandum written by Chief Inspector Anthony Wong dated March 23, 2000 which states that one of the purposes of CIB was "assignment for commanders for disciplinary reasons." *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. at Exh. 6. Looking at the evidence presented by the parties and drawing all reasonable inferences in the light most favorable to the Plaintiff, the Court concludes that a reasonable jury could find that the Plaintiff's transfer to CIB was an adverse employment action.

The Defendants claim that the Plaintiff has failed to prove the transfer was motivated by the Plaintiff's protected activity because Defendant Timoney is the person responsible for the transfer and there is no evidence that Defendant Timoney knew of the testimony given by the Plaintiff. While the Plaintiff may be correct that direct evidence of Defendant Timoney's knowledge is lacking, the Plaintiff is entitled to prove his knowledge through circumstantial evidence. As discussed previously, the transfer to CIB could reasonably raise an inference that the Plaintiff was being disciplined. In his deposition, Inspector Norris acknowledges that the Plaintiff exercised poor judgment in testifying and that they were upset that the Plaintiff would testify in a retail theft case. *See* Def.'s Mot. for Summ. J. at Exh. B, 135:1–136:22. There is also testimony that the Commissioner, Defendant Timoney, would solicit and receive information from internal affairs regarding personnel before they were transferred. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. at Exh. 7, 121:1–124:3. At the summary judgment phase, the Court cannot assess the credibility of the evidence. Combining the inference of a disciplinary action, the displeasure with the Plaintiff's testimony by Internal Affairs Personnel, and the fact that the Commissioner gets information from Internal Affairs prior to transferring personnel, a reasonable per-

son could find that the transfer was motivated by retaliation.

The Defendants also claim that the Plaintiff would have been transferred regardless of his testimony and present evidence of a departmental restructuring to support this allegation. The Defendants and the Plaintiff are at odds over the actual disposition of the Plaintiff's job functions. In addition, even if the restructuring called for a transfer of the Plaintiff from MRB, the alleged retaliatory act is not only the transfer from MRB, it is the transfer to CIB. The Plaintiff alleges that the Defendants could have transferred him to a more suitable position rather than to what is commonly thought of as a punitive position. This issue is a factual dispute which should go to the jury.

For the foregoing reasons, the Court finds that a reasonable jury could find that the Plaintiff's testimony was a motivating factor in his transfer to CIB and that alternate reasons for the transfer proffered by the Defendants are pretextual.

## IV. *QUALIFIED IMMUNITY*

The Defendants assert that Defendants Timoney and Norris should not be held personally liable for any violation of the Plaintiff's constitutional rights because they are protected by qualified immunity. Public officials performing discretionary functions are shielded from personal liability under the doctrine of qualified immunity so long as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *See Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 1699, 143 L.Ed.2d 818 (1999). The main issue regarding the Defendant's claim is whether the right allegedly violated was clearly established. " 'Clearly established' for purposes of qualified immunity means that [t]he contours of the right must be

sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Id.* at 616, 119 S.Ct. at 1699. The constitutional right violated "must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Id.*, 119 S.Ct. at 1700.

The Defendants argue that the constitutional rights regarding police officer's testimony is not clearly defined and a reasonable officer could have believed that they were allowed to discipline the Plaintiff based upon testimony that they felt reflected poorly upon the PPD. The Plaintiff urges a more broad interpretation of rights asserting that the First Amendment Right as it pertains to a police officer's testimony was clearly established at the time of the deprivation of the Plaintiff's rights. However, the analysis of a public employee's free speech rights does not stop at a superficial level. As discussed above, a public employee's speech is only protected speech if it is "on a matter of public concern, and the employee's interest in expression on this matter [is] not [ ] outweighed by any injury the speech could cause to the interest of the state as an employer in promoting the efficiency of the public services it performs through its employees." *Watters*, 55 F.3d at 892. While it was clearly established that trial testimony is a matter of public concern, the entire remainder of the analysis is a complicated balancing test. A reasonable officer could have felt that the balancing test weighed in favor of allowing discipline for testimony they felt was detrimental to the PPD, particularly in light of the Third Circuit's decision in *Green.*

For the foregoing reasons, the Court finds that the Defendants' Timoney and Norris are dismissed in their individual capacities.

## V. *MUNICIPAL LIABILITY*

 A municipality may not be held liable under § 1983 on a respondeat superior theory in the absence of an official governmental policy or custom. *See Monell v. Dept. of Social Services of New York*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Defendants assert that the City of Philadelphia cannot be held liable here because there was no official policy or custom. However, the Defendants ignore that the City can be held liable for decisions of officials with policymaking authority. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). In order to find the City liable under that theory, the Plaintiff must show that there was an action by a relevant policymaker and that it was taken with "deliberate indifference" to its known or obvious consequences. *See Bryan County,Oklahoma v. Brown*, 520 U.S. 397, 418, 117 S.Ct. 1382, 1394, 137 L.Ed.2d 626 (1997). Here, the Plaintiff has a relevant policymaker. *See Keenan v. City of Philadelphia*, 983 F.2d 459, 468 (3d Cir.1992). In addition, as discussed above, a jury could find that the Defendant Timoney made a conscious decision to punish the Plaintiff for giving testimony in Court. Therefore, a jury could find the Defendant Timoney acted with deliberate indifference to the rights of the Plaintiff and municipal liability could be imposed.

## VI. *STATE LAW CLAIMS*

The Plaintiff has agreed to the dismissal of his state law claims.

An appropriate Order follows.

### *ORDER*

AND NOW, this 29th day of June, 2001, upon consideration of the Defendants' Motion for Summary Judgment (Docket No. 12), the Plaintiff's Response to Defendants' Motion for Summary Judgment (Docket No. 14), the Defendants' Reply Brief in Support of Their Motion for Summary Judgment (Docket No. 16), and the Plaintiff's Sur Reply to Defendants' Response (Docket No. 18), IT IS HEREBY ORDERED that the Defendants' Motion is **GRANTED IN PART and DENIED IN PART**; and

IT IS HEREBY FURTHER ORDERED that the Plaintiff's claims under § 1985, § 1986, the Fourth Amendment, the Fifth Amendment, the Fourteenth Amendment, 18 Pa.C.S.A. § 4953(A), the Pennsylvania Constitution, and individually against Defendants Timoney and Norris are **DISMISSED WITH PREJUDICE.**