

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-16-2003

# Carter v. DE State Univ

Precedential or Non-Precedential: Non-Precedential

Docket 02-1918

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Carter v. DE State Univ" (2003). *2003 Decisions.* Paper 651.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/651

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 02-1918

———

DR. KATHLEEN CARTER,

Appellant.

v.

DELAWARE STATE UNIVERSITY;
DR. WILLIAM B. DELAUDER,
PRESIDENT; DR. JOHNNY
TOLLIVER; DEAN JACQUELINE W.
GORUM; DR. ALETA
HANNAH; and DELAWARE STATE
UNIVERSITY BOARD OF TRUSTEES

———

On Appeal from the United States District Court
for the District of Delaware
(C.A. No. 99-cv-642)
District Judge: The Honorable Gregory M. Sleet

———

Submitted under Third Circuit LAR 34.1(a)
January 16, 2003

Before: ROTH, FUENTES and ALDISERT, <u>Circuit Judges</u>.

(Filed April 16, 2003)

———

OPINION OF THE COURT

———

ALDISERT, <u>Circuit Judge</u>.

Dr. Kathleen Carter appeals from summary judgment entered in favor of Delaware State University ("DSU") and several of its officers including its President, its Dean and the members of the Board of Trustees. In her complaint, Dr. Carter asserted race discrimination claims under Title VII, 42 U.S.C. §§ 1981, 1983, 1985 and 1986.

The parties are familiar with the facts and the district court proceeding. Accordingly, we will primarily address the legal issues presented.

## I.

DSU is a land-grant college and therefore a public university operated by the state. It is a historically black institution, and thus the majority of administrators, faculty and students are African Americans. Dr. Carter, a white female, was hired in 1993 as Associate Professor of Education and Director of the Vocational and Teacher Education Program in the Education Department at DSU. In 1995, she accepted an appointment as Chair of the DSU Education Department. She alleges that several of her African American colleagues in the Education Department did not appreciate this appointment and the subsequent racial tension led to the denial of her tenure application. It is the denial of tenure that undergirds her complaint against the University.

It appears that when Dr. Carter's application for tenure was originally considered by the University's President, Dr. William H. DeLauder, it was not summarily denied but rather remanded to various stages of the tenure application process for further

2

consideration. Upon remand, Professors Aleta Hannah and Jacqueline W. Gorum, along with University Provost and Vice President for Academic Affairs Johnny Tolliver, reversed their previous favorable recommendations, which had been based upon a mistaken belief that they were not permitted to consider their personal judgments of what they considered to be Dr. Carter's ineffective service to DSU.

Dr. DeLauder's later reconsideration resulted in a denial of her application for tenure based upon ineffective service as chair of her department, ineffective service in pursuit of accreditation by the National Conference on Accreditation of Teacher Education ("NCATE") and deficient results of performance evaluations. Dr. Carter, however, alleges that her tenure application was denied because of her ethnicity and that Dr. DeLauder's stated reasons were pretextual. Dr. Carter exhausted University grievance procedures before filing this lawsuit.

She concedes that the Eleventh Amendment prevents her from suing DSU on any of the statutory claims. App. at 34a; see also Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989).

## II.

In granting summary judgment in favor of the Defendants on the Title VII racial and gender discrimination claim, the district court concluded:

> Carter has not proven that race was directly involved in her tenure decision. Although Carter alleges that she has direct evidence to prove that both Hanna and DeLauder were racist, the record does not support her contention. Carter urges that the court should find DeLauder was racist because he believed Hanna — an African American woman — over Carter and because he failed

3

to investigate the allegations by Dr. Taylor that Carter was racist...It is a large leap of logic to conclude that DeLauder believed Hanna simply because she is an African American.  There are a number of reasons why a person might believe another person, and there is scant evidence in this record to support the conclusion that race was the only factor — if it was a factor at all — in DeLauder's decision to credit Hannah's statements.  Moreover, the fact that Delauder did not investigate the allegations of racism against Carter does not prove that he is a racist.  He simply could have believed that the allegations were unfounded.

* * * *

Carter has similarly failed to present direct evidence of Hannah's racism...The Court is not permitted to, and will not, assume that [any of] Hannah's actions were racist in the absence of direct evidence, which Carter has failed to provide.

Carter v. Del. State Univ., No. 99-642, 8-10 (D. Del. Mar. 21, 2001) (Memorandum and Order), reprinted in App. at 28a-30a.

The court then applied the McDonnell Douglas paradigm in dismissing Dr. Carter's attempt to utilize indirect evidence to illustrate Defendants' actions were racially motivated.  McDonell Douglas Corp. v. Green, 411 U.S. 792 (1973).  The court understood Dr. Carter to make out a prime facie case.  Once Dr. Carter was deemed to have established this, the burden shifted to DSU to "articulate one or more legitimate, non-discriminatory reasons for its employment decision."  Waldron v. SL Indus., 56 F.3d 491, 494 (3d. Cir. 1995).

The court properly held that DSU provided several non-discriminatory reasons for its decision — all of which would be relevant to the tenure application of a candidate of any race.  Dr. Carter refutes these reasons with a claim of pretext based upon contentions that: (1) Dr. DeLauder inappropriately considered her service as department chair; (2) Dr.

4

DeLauder's conflicting reasons for denying tenure; (3) African Americans were tenured with performance evaluations similar to hers; (4) Dr. Hannah acted with racial animus in her evaluations; and (5) Dr. DeLauder had previously lauded her for her participation on the NCATE committee and then reversed himself. The district court determined that Dr. Carter failed to prove racial animus. Our review of the record persuades us that the district court did not err and we will affirm that portion of the judgment relating to Title VII.

## III.

The parties have agreed that the § 1981 claim is not viable in light of the court's ruling — and now our affirmance — of the Title VII claim.

## IV.

Defendants were properly granted summary judgment on the § 1983 claim. To establish that Dr. Carter was denied tenure in retaliation for exercising her First Amendment rights, she must demonstrate that: (1) her speech was protected; and (2) her protected speech was a substantial or motivating factor behind the alleged retaliation. Green v. Phila. Hous. Auth., 105 F.3d 882, 885 (3d Cir. 1997). If these two elements are satisfied, the burden will shift to the Defendants to demonstrate that the same action would have been taken if the speech had not occurred. Id.

The court found that Dr. Carter's speech — criticism of DSU's scheduling policies — was both entitled to First Amendment protection and a substantial or motivating factor in the Defendant's decision to deny tenure. The court then found that Defendants carried their burden of demonstrating by a preponderance of the evidence that they would have taken the

5

same action in the absence of the protected conduct.

Dr. Carter did not provide any facts to rebut the assertions that her evaluations were neutral and that her performance on the NCATE committee was inadequate. Therefore, we conclude there was no impediment to the court's granting of summary judgment in favor of the Defendants on this claim.

V.

The Defendants were entitled to summary judgment on the §§ 1985, 1986 and civil conspiracy claims. The court properly noted that if there is no violation of § 1985, there can be no violation of § 1986 because both claims turn on allegations contained in § 1985. Similarly, if neither of these statutory claims are implicated, the claim for civil conspiracy must be dismissed because civil conspiracy claims cannot stand alone without some independent statutory violation. Accordingly, the court properly focused on the § 1985 claim.

The § 1985 claim fails for two reasons. First, assuming Dr. Carter could prove a conspiracy took place, "a conspiracy claim [under § 1985] requires a clear showing of invidious, purposeful and intentional discrimination between classes or individuals." Robinson v. McCorkle, 462 F.2d 111, 113 (3d Cir. 1972). For the reasons stated above, however, Dr. Carter has failed to clearly demonstrate that racial animus motivated the Defendants' decision. Second, under § 1985 a conspiracy must involve more than one state or private agency. Johnson v. Univ. of Pittsburgh, 435 F. Supp. 1328, 1370 (W.D. Pa. 1977). In the present case, each of the Defendants is a member of the same institution —

DSU.

VI.

Dr. Carter's claim of deprivation of procedural due process turns on a showing that she was objectively entitled to tenure and did not merely have an expectation of promotion. The record does not support such a finding and the summary judgement was properly granted in favor of the Defendants.

VII.

Dr. Carter's claims for breach of contract and intentional infliction of emotional distress were properly barred by the Eleventh Amendment.  Mckay v. Del. State Univ., No. 99-219, 2000 WL 1481018, at *12 (D. Del. Sept. 29, 2000).

* * * * *

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary.

The judgment of the district court will be affirmed.

———

TO THE CLERK:

Please file the foregoing opinion.

 /s/ Ruggero J. Aldisert

Circuit Judge

7