**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4618
_____

STEVEN W. BURNE,
                              Appellant

v.

FRANK SIDEROWICZ;
DENNIS GIORDANO;
BRIAN BOGNATZ; ERIN SODIN;
ROBERT COX
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(Civil Action No. 3:07-cv-00588)
District Judge: Honorable James M. Munley
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 12, 2011

Before:  SLOVITER, FUENTES, and GARTH, Circuit Judges

(Opinion filed July, 21, 2011)

_____

OPINION OF THE COURT
_____

GARTH, Circuit Judge.

       Plaintiff-appellant Steven W. Burne appeals from the District Court's order

granting summary judgment to defendants on Burne's § 1983 action.  Burne alleges that

1

the defendants pretextually terminated his employment in retaliation for Burne's offer to give a statement concerning his supervisor's involvement in a workplace dispute. Because we agree with the District Court that the First Amendment does not protect such speech by a public employee, we will affirm.

I.

Burne began his employment with the Pennsylvania Department of Transportation (PennDOT) in November 2001 as a seasonal equipment operator and snowplow driver. In January 2005, while working at a PennDOT depot in Lackwanna County, Burne allegedly witnessed his supervisor, appellee Frank Siderowicz, physically attack another employee, John Fife. Burne then allegedly told Robert Cox, the Lackawanna County Assistant Manager for PennDOT, that he would give a statement reporting the altercation. Siderowicz denies that any such altercation transpired, and Cox does not recall Burne approaching him or whether the dispute between Siderowicz and Fife turned physical. No one filed a formal complaint reporting the incident.

On February 10, 2005, Brian Bognatz, a Carbondale, Pennsylvania police officer, observed Burne driving a PennDOT snowplow through a red light. Bognatz stopped Burne and recorded Burne's license and registration, but did not issue a citation at that time. Burne maintains that the light was yellow and that Bognatz left Burne with the impression that no citation would be issued. However, the following day, Bognatz called Dennis Giordano, the Lackawanna County Manager for PennDOT, to apprise him of Burne's traffic violation. On the advice of Erin Sodin-Mazikewich, a human resources coordinator in PennDOT's district office, Giordano tried to obtain an incident report from

2

Bognatz.  Since Giordano could not reach Bognatz, he called the Mayor of Carbondale, who in turn communicated with Bognatz.  Bognatz then faxed PennDOT a copy of the citation, which was undated.  According to Bognatz, officers have up to thirty days to issue citations for summary offenses, and traffic tickets are "very, very often filed after the incident." (App. 129.)

Giordano scheduled a pre-disciplinary hearing for March 11, 2005, to discuss the traffic citation with Burne and to allow Burne to respond to the allegations.  Following the hearing, Burne was first suspended, then terminated effective March 11, 2005.  In a termination letter dated March 28, 2005, PennDOT specified that Burne's traffic violation was the reason for his termination.

On April 4, 2005, a magistrate dismissed Burne's traffic citation because Bognatz did not appear at the citation hearing.

On March 20, 2008, Burne filed an amended complaint against Siderowicz, Giordano, Sodin-Mazikewich, Cox (hereafter "PennDOT Defendants"), and Bognatz in the District Court for the Middle District of Pennsylvania.  Burne's complaint, brought under 42 U.S.C. § 1983, alleged (1) violations of his First Amendment right to speak on a matters of public importance without fear of retaliation, (2) violations of his Fourth Amendment rights to be free of unlawful seizures and of malicious prosecution, and (3) conspiracy to violate those rights. The gravamen of Burne's complaint was that the stated basis for his termination -- the traffic citation -- had been manufactured as a pretext to fire him for offering a statement about Siderowicz's alleged misconduct.  Burne primarily sought $40,000 in special damages on account of lost wages.

3

Bognatz moved for summary judgment on April 20, 2009, and the PennDOT Defendants moved for summary judgment on April 27, 2009.

The District Court granted both motions for summary judgment. It held that (1) Burne's expression of willingness to give a statement about the Siderowicz-Fife altercation was not protected speech related to a public concern; (2) even if such speech were protected, it did not play a substantial role in Burne's termination; and (3) Burne would have been terminated in any event. The District Court also determined that stopping Burne for what Bognatz perceived as Burne running a red light was objectively reasonable, and that Burne could not satisfy several elements of a malicious prosecution claim. Finally, the District Court concluded that in the absence of First Amendment or Fourth Amendment violations, Burne could not establish a claim of conspiracy under § 1983.[1]

## II.

## A.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, & 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We exercise plenary review over the District Court's grant of summary judgment, viewing "the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005) (citation omitted). "Under Federal Rule of Civil Procedure 56, summary

---

[1] On appeal, Burne does not contest the portion of the District Court's holding relating to his Fourth Amendment claims.

judgment is proper 'if the movant shows that there is no material dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011).

## B.

To establish a First Amendment retaliation claim, a public employee must show that (1) "the activity in question is protected by the First Amendment" and (2) "the protected activity was a substantial factor in the alleged retaliatory action." Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006) (citation omitted). The employer can rebut those showings by demonstrating that it "would have taken the adverse action in the absence of [the employee's] protected conduct." Id. at 241 n.23 (citation omitted).

The threshold issue -- whether the speech concerned is protected under the First Amendment -- "is solely a question of law." Miller v. Clinton Cnty., 544 F.3d 542, 548 (3d Cir. 2008). Speech is protected if (1) "the employee spoke as a citizen on a matter of public concern" and (2) the government employer had no "adequate justification for treating the employee differently from any other member of the general public" as a result of the statement. Garcetti v. Ceballos, 547 U.S. 410, 418 (2006) (citations omitted). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147-48 (1983).

## C.

Burne presents two main arguments in support of his position that his speech touched on an issue of public concern.

First, Burne argues that his statements to Cox implicated an issue of public concern because Burne "had no personal interest in reporting the workplace assault." But the mere fact that Burne's speech was not impelled by self-interest does not elevate it to a level of public significance. See Azzaro v. Cnty. of Allegheny, 110 F.3d 968, 978 (3d Cir. 1997) ("[T]he speaker's motive, while often a relevant part of the context of the speech, is not dispositive in determining whether a particular statement relates to a matter of public concern.") "Rather, the issue is whether it is important to the process of self-governance that communications on this topic, in this form and in this context, take place." Id. at 977. Burne's proffer of a statement to a superior regarding a private dispute in the workplace lacked the requisite connection to broad social and political issues, transparency in government affairs, or the effectiveness of government service that is normally characteristic of an issue of public concern. See Borden v. Sch. Dist. of Twp. of E. Brunswick, 523 F.3d 153, 170 (3d Cir. 2008).

Second, Burne attempts to liken his situation to that of the employee in Pro v. Donatucci, 81 F.3d 1283 (3d Cir. 1996), who claimed retaliation after volunteering to testify against her employer at his divorce proceeding. We recognized in Pro that the speech was protected "because of its form and context -- that is, potential sworn testimony before an adjudicatory body." Id. at 1288 (citation and internal quotation marks omitted); see also Green v. Phila. Hous. Auth., 105 F.3d 882, 887 (3d Cir. 1997) ("In Pro, we held the context of a courtroom appearance raises speech to a level of public

6

concern, regardless of its content." (citations omitted)).  The unique public interest inherent in courtroom testimony, which we identified in <u>Pro</u>, does not pertain here, where no adjudicative proceeding or internal investigation was  initiated, no witness testimony was solicited, and indeed, no formal complaint was ever filed.[2]

The better analog to Burne's allegedly protected speech is the "speech" at issue in <u>Gorum v. Sessoms</u>, 561 F.3d 179 (3d Cir. 2009), in which a professor claimed he had been retaliated against for, among other things, assisting a student in disciplinary proceedings.  Burne's professed willingness to provide a statement regarding a workplace altercation bears the same hallmarks of the professor's speech in <u>Gorum</u> that led us to conclude that it did not implicate public concerns: Burne's speech was "related to the personal grievance" of another -- namely, Fife; "[t]here is no evidence in the record that [Burne] even made a public statement," since he merely indicated that he would make a statement; and "[t]here is no proof that he thought any public policy issues were at stake." <u>Id.</u> at 187.

In short, Burne's speech concerned a private dispute between his supervisor and a co-worker, which does not enjoy First Amendment protection.  <u>See</u> <u>Connick</u>, 461 U.S. at 149 ("While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require

---

[2] We also reject Burne's argument that defendant-appellees' actions implicated the Petition Clause of the First Amendment, since he fails to identify a protected petitioning activity -- e.g., initiating a lawsuit or seeking redress for a grievance -- for which he may have been penalized. <u>See</u> <u>Foraker v. Chaffinch</u>, 501 F.3d 231, 237-38 (3d Cir. 2007), <u>abrogated on other grounds by</u> <u>Borough of Durea, Pa. v. Guarnieri</u>, 131 S.Ct. 2488 (2011).

a public office to be run as a roundtable for employee complaints over internal office affairs.") As a result, we cannot say that Burne's speech "'touch[ed] on broad social or policy issues' or 'implicate[d] the discharge of public responsibilities by an important government office, agency, or institution,'" which it must, in order to be deemed protected speech. Gorum, 561 F.3d at 187 (quoting Sanguigni v. Pittsburgh Bd. of Pub. Educ., 968 F.2d 393, 397 (3d Cir. 1992)).

Having determined at the threshold that Burne's speech is not protected by the First Amendment as a matter of law, we need not address the other aspects of the First Amendment retaliation inquiry, i.e., whether the PennDOT Defendants had sufficient justification to treat Burne differently and what role Burne's speech played, if any, in his termination.

Finally, inasmuch as Burne has not demonstrated a violation of his First Amendment rights, he perforce cannot sustain his claim of a conspiracy to deprive him of those rights. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 150 (1970).

III.

For the foregoing reasons, we will affirm the District Court's November 10, 2009, grant of summary judgment in favor of the PennDOT Defendants and Bognatz.

8