

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-13-2003

# Shehee v. Wilmington

Precedential or Non-Precedential: Non-Precedential

Docket 02-2601

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Shehee v. Wilmington" (2003). *2003 Decisions.* Paper 558.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/558

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 02-2601

———

JOHN SHEHEE,
                                        Appellant

v.

CITY OF WILMINGTON, a political
subdivision of the State of Delaware;
GREGORY WILLIAMS, individually and in
his Official Capacity;
CLAUDE MCCREA, individually and in
his official capacity

———

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
D.C. Civil No. 00-cv-00918
District Judge:  The Honorable Sue L. Robinson

———

Argued April 8, 2003

———

Before: BECKER[*], Chief Judge, BARRY and BRIGHT,[**] Circuit Judges

———

(Filed May 13, 2003)

———

---

[*]Judge Becker completed his term as Chief Judge on May 4, 2003.

[**] The Honorable Myron H. Bright, United States Circuit Judge for the Eighth Circuit, sitting by designation.

Victor F. Battaglia, Esq. (Argued)
Philip B. Bartoshesky, Esq.
Biggs & Battaglia
921 Orange Street
P.O. Box 1489
Wilmington, DE  19899

Attorneys for Appellant


Rosamaria Tassone, Esq. (Argued)
Aaron Goldstein, Esq.
City of Wilmington Law Department
800 North French Street, 9th Floor
Wilmington, DE  19801

Attorneys for Appellee City of Wilmington


Kathleen M. Jennings, Esq. (Argued)
Oberly, Jennings & Rhodunda
800 Delaware Avenue, Suite 901
P.O. Box 2054
Wilmington, DE  19899

Attorney for Appellee Gregory Williams


William J. Rhodunda, Jr., Esq. (Argued)
Oberly, Jennings, Rhodunda
800 Delaware Avenue, Suite 901
P.O. Box 2054
Wilmington, DE  19899

Attorney for Appellee Claude McCrea

OPINION

BARRY, Circuit Judge

Appellant John Shehee filed suit against appellees the City of Wilmington, Gregory Williams, and Claude McCrea, alleging violations of 42 U.S.C. §§ 1983, 1985, and 1986, the First Amendment, and state law. The District Court granted appellees' motions for summary judgment. *Shehee v. City of Wilmington*, 205 F. Supp.2d 269 (D. Del. 2002). Shehee filed this timely appeal. We have jurisdiction under 28 U.S.C. § 1291, and will reverse in part and affirm in part.

Because we write primarily for the parties and the District Court, we need not describe in any detail the factual background of this case. Suffice it to say that the central question presented is whether the ongoing harassment of Shehee in his workplace worsened after he testified at a deposition in a co-worker's lawsuit against the City, and worsened to such a degree that a reasonable jury could find that his medical breakdown three months later was caused by retaliation against him on the basis of his protected speech.

We review the District Court's grant of summary judgment *de novo*. Summary judgment under Federal Rule of Civil Procedure 56(c) is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

3

law." FED. R. CIV. P. 56(c).

## I.  42 U.S.C. § 1983 CLAIM FOR FIRST AMENDMENT RETALIATION

The District Court correctly analyzed Shehee's § 1983 retaliation claim under the three-step process set forth in *Green v. Philadelphia Housing Authority*, 105 F.3d 882 (3d Cir. 1997). In order to state a prima facie case of discrimination, a plaintiff must first show that he or she engaged in protected speech. Second, the plaintiff must show that the protected speech was a substantial or motivating factor in the alleged acts of retaliation. Third, the defendant may defeat the plaintiff's claim by showing that the same actions would have been taken even absent the protected conduct. *Green*, 105 F.3d at 885.

Neither party has challenged the District Court's conclusion that Shehee's deposition testimony in *Brown v. Sills*, Civ. No. 99-680-RRM (D. Del.), on June 14, 1999 was protected speech. Therefore, we will turn our attention to the second step of the *Green* inquiry.

In order to show that the protected speech was a substantial or motivating factor in the alleged acts of retaliation, a plaintiff need not show that the decision was motivated solely by anti-speech animus, or even that the illegal animus was the dominant or primary motivation for the retaliation. *Suppan v. Dadonna*, 203 F.3d 228, 236 (3d Cir. 2000). This is less than a showing that the plaintiff's protected conduct was the "but for" cause

4

of the challenged actions.[1] *Id.*

Shehee alleges that, after he gave his deposition, Williams (and to a lesser extent McCrea) harassed him by reducing his responsibilities, micro-managing his decisions, instructing other employees to report negative findings about his job performance, imposing unique reporting requirements on him, and, after he took medical leave, changing the office locks and boxing up and storing his belongings. When determining whether a retaliatory campaign of harassment is actionable, the question is whether the alleged retaliatory conduct would "deter a person of ordinary firmness from exercising his First Amendment rights." *Suppan*, 203 F.3d at 233. The District Court found that the alleged acts of harassment, except for the changed locks and boxed-up personal items, would call for a "yes" in answer to this question. We agree.

The District Court also found, however, that no reasonable jury could find a link between the harassment and the protected speech because "the alleged harassment that ultimately resulted in plaintiff taking medical leave was part of a continuing atmosphere of hostility." *Shehee v. City of Wilmington*, 205 F. Supp.2d 269, 278 n.10 (D. Del. 2002). Indeed, the evidence paints a compelling picture that Williams was unprofessional, abusive, erratic, hostile, and/or irrational toward many employees of the Department of

---

[1] That burden is on the defendant; if the plaintiff sets forth a prima facie case of discrimination, the defendant may defeat it by showing that the challenged actions would have been taken regardless of the plaintiff's protected conduct, i.e. that there is no "but for" causation. *Suppan*, 203 F.3d at 236.

5

Parks and Recreation, including Shehee and even McCrea, during much of his tenure as Director of the Department. While Shehee concedes that the harassment by Williams began before the June 1999 deposition, he contends that a reasonable jury could find that the harassment intensified after his deposition and intensified as a result of that deposition, in violation of § 1983. We agree with respect to Williams, but not with respect to McCrea.

Shehee's testimony that the harassment intensified during the summer of 1999 is supported by several witnesses. Tarrone Richardson testified that McCrea, at Williams's behest, told him to "spy [on] and find incriminating evidence" about Shehee on June 23, 1999, shortly after the *Brown* deposition. Katrina Cooper testified that after Shehee's deposition, Williams watched the building more intensely and the atmosphere in the office became more tense. Michael Stewart testified that at a meeting during the summer of 1999 with McCrea and Williams, he was told that one of their goals was to "get rid of" Shehee. JoAnne Parker-Henry testified that after Shehee was deposed in the *Brown* case, Williams told her that Shehee "wasn't being loyal because he was giving a deposition for Mike Brown and he had no choice but to find some reason to fire him . . . . [Williams] just became extremely . . . obsessive in this idea that he had to go."

Although other evidence suggests that Williams's campaign to get rid of Shehee began before the deposition, a reasonable jury could find that the harassment by Williams intensified during the summer of 1999, and that it was motivated by retaliation on the

6

basis of protected speech. There is, therefore, a genuine issue of fact as to whether Shehee has satisfied his prima facie case against Williams.

With respect to the third step of the *Green* inquiry, appellees argue that Shehee would have been harassed even if he had not testified in the *Brown* case. However, since Shehee has presented evidence that the level of harassment increased after he exercised his First Amendment rights, *see* discussion *supra*, we conclude that there is a genuine issue of material fact as to whether he would have been harassed to the same extent, absent the protected activity. We note, moreover, that Shehee had worked under Williams without medical incident for several years. A reasonable jury could find that increased workplace stress during the summer of 1999 caused him to take medical leave within three months of his deposition and come under psychiatric care two months after that, and that the intensified harassment was, so to speak, the final straw that broke Shehee's back – and his health.

We reach a different disposition with regard to McCrea. It was Williams, not McCrea, who was criticized by Mike Brown on television, prompting Brown's lawsuit against the City and Shehee's deposition. The evidence is overwhelming that the impetus for the subsequent harassment came from Williams; indeed, and importantly, the only evidence that McCrea even knew about Shehee's deposition was a very tentative statement to that effect by Shehee himself. The sole motive suggested for McCrea's alleged participation in Williams's harassment campaign against Shehee was fear of

7

losing his job because Williams threatened precisely that if McCrea did not do as he was told.

Based on this record, no reasonable jury could infer that McCrea's alleged participation in Williams's harassment of Shehee was motivated by Shehee's testimony in Brown's lawsuit. The District Court correctly granted summary judgment to McCrea on the § 1983 claim.

## II. LIABILITY OF THE CITY OF WILMINGTON UNDER 42 U.S.C. § 1983

Because the City cannot be liable for the constitutional torts of its employees by virtue of *respondeat superior*, in order to defeat the City's summary judgment motion, Shehee was required to show that the alleged retaliation was inflicted because of the "execution of a government's policy or custom, whether made by its lawmakers or by those whose acts or edicts can fairly be said to represent official policy." *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Interpreting two decisions by a divided Supreme Court in *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) and *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988), we have held that municipal policy may be made either by official proclamation or by acquiescence in a permanent custom. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). An official policymaker can subject the municipality to liability either by knowingly acquiescing in the challenged actions or by delegating his or her

authority to the employee responsible for those actions. *Id.* at 1481. The City, therefore, can only be liable under § 1983 for Williams's actions if either: (1) Williams was a final policymaker; (2) a final policymaker knowingly acquiesced in Williams's actions; or (3) a final policymaker delegated his or her authority to Williams.

In determining whether Williams was a "final policymaker," we turn to the applicable Delaware law: here, the Wilmington City Charter and Code. A "final policymaker" is not always the chief executive officer, which in this context is the Mayor. WILMINGTON CITY CHARTER § 4-100. The test is "which official has final, unreviewable discretion to make a decision or take an action." *Andrews*, 895 F.2d at 1481 (finding that police commissioner was final policymaker for § 1983 purposes in sexual harassment lawsuit, because he had promulgated department training manual regarding sexual harassment, established an equal employment office to deal with discrimination issues, and personally reviewed the report about the plaintiffs' complaint).

The Wilmington City Charter vests the executive and administrative power of the City in the "mayor and such other officers, departments, boards and commissions as are authorized or designated in this Charter . . . ." WILMINGTON CITY CHARTER § 1-103(1). The Charter designates a variety of departments to perform the executive and administrative work of the City, including the Department of Parks and Recreation. *Id.* § 3-100. The Charter further provides that the head of each department "shall exercise the powers and perform the duties vested in and imposed upon the department." *Id.* § 3-101.

The issue is not whether Williams had the authority to handle employees on a day-to-day basis, which he undoubtedly did. Rather, the issue is whether Williams, as head of the Department, had the discretionary authority to institute an illegal policy of harassing employees such as Shehee for exercising their First Amendment rights. He clearly did. Therefore, Williams was a final policymaker whose acts in violation of § 1983 may fairly be said to represent the City's official policy. *See Monell*, 436 U.S. at 694. Because we find that the City is responsible for actions taken by Williams in violation of § 1983, we need not reach the other possible bases for the City's liability. We note, however, that it cannot be the case that every employee with the power and ability to harass another employee is a final decision-maker on behalf of the municipality whenever retaliation by harassment is alleged. Rather, to be a final policymaker, the employee must have greater decision-making authority. In the present case, Williams had the final say regarding the hiring and firing of employees. If Williams could have fired Shehee, it simply does not make sense to argue that he did not have the final policymaking authority to harass him (a lesser retaliatory action).

The District Court erred, therefore, in granting summary judgment to the City on the § 1983 claim.


### III.     LIABILITY UNDER 42 U.S.C. §§ 1985 AND 1986

Shehee also alleges that Williams and McCrea conspired to injure him because of

his deposition testimony in *Brown*, in violation of 42 U.S.C. §§ 1985 and 1986.

42 U.S.C. § 1985 prohibits conspiracy by two or more persons to intimidate or threaten any witness from giving full, free, and truthful testimony in a pending matter or to injure such a witness on account of his having given such testimony. 42 U.S.C. § 1985(2). We have held that the "essential allegations of a 1985(2) claim of witness intimidation are (1) a conspiracy between two or more persons (2) to deter a witness by force, intimidation or threat from attending court or testifying freely in any pending matter, which (3) results in injury to the plaintiffs." *Malley-Duff & Assocs., Inc. v. Crown Life Ins. Co.*, 792 F.2d 341, 356 (1986), *aff'd*, 483 U.S. 143 (1987). Where, as here, the issue is not witness intimidation but retaliation, the second prong must be interpreted to bar any conspiracy to retaliate against a witness who has attended court or testified in any pending matter, which results in injury to him or her.

Even had we held McCrea in on the § 1983 retaliation claim, the evidence is insufficient to raise a genuine issue of fact as to whether Williams and McCrea agreed to intensify any pre-existing harassment because of Shehee's deposition testimony on June of 1999. Although a co-conspirator need not know all of the details of the illegal plan, he or she must have shared in the general conspiratorial objective. *See Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir. 2000). Moreover, an agreement between Williams and McCrea to harass Shehee, while offensive, would not violate § 1985; it is the agreement to retaliate against Shehee for exercising his First Amendment rights that brings the

11

conspiracy under § 1985. There is no evidence of such an agreement. Shehee's § 1985 claim was properly dismissed.

Violations of 42 U.S.C. § 1986 by definition depend on a pre-existing violation of § 1985. *See Clark v. Clabough*, 20 F.3d 1290, 1295, 1295 n.5 (3d Cir. 1994). Because the § 1985 claim was correctly dismissed, the District Court also correctly dismissed Shehee's § 1986 claim.

## IV. CONCLUSION

For the foregoing reasons, we will reverse in part and affirm in part. We will reverse the District Court's grant of summary judgment to Williams and the City as to Shehee's claims under 42 U.S.C. § 1983 and will reverse the Court's concomitant refusal to exercise supplemental jurisdiction over the State law claims. We will affirm the dismissal of Shehee's claims under 42 U.S.C. §§ 1985 and 1986, and will affirm the grant of summary judgment to McCrea on the § 1983 claim. We will remand for further proceedings consistent with this opinion.

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.

/s/ Maryanne Trump Barry
Circuit Judge

12